UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA,** | } } } |
| **Plaintiff,** | } } |
| **v.** | } Case No.: 2:24-cv-00165-RDP } |
| **HUMANA, INC.** *et al*, | } } |
| **Defendants.** | |

## MEMORANDUM OPINION

This matter is before the court on Defendants' Motion to Compel Arbitration, or Alternatively, Motion to Dismiss (Doc. # 17) and Defendants' Motion to Stay Discovery and Federal Rule of Civil Procedure 16's Requirements (Doc. # 23). These Motions have been fully briefed (Docs. # 17, 23, 25, 27-29) and are ripe for review. After careful consideration, the court concludes that Defendants' Motions are due to be granted in part and denied in part as moot.

## I.    Background

Plaintiff the Board of Trustees of the University of Alabama ("UAB Hospital")[1] brings this action against Defendants Humana, Inc., Humana Insurance Company, Humana Health Plan, Inc., and fictitious defendants 1-8 (collectively, "Humana" or "Defendants"). (Doc. # 1-1 at 2). Plaintiff and Defendants are both parties to the "Letter of Agreement – Provider Status and Payment for Humana Medicare Advantage and Group Retiree Members" (the "Agreement"). (*Id.* ¶ 1). Under

---

[1] The Board of Trustees of the University of Alabama system ("Board of Trustees") is the named Plaintiff in this case. However, the facts alleged in the complaint involve the University of Alabama at Birmingham Hospital ("UAB Hospital"). (Doc. # 1-1 at 2). Thus, for the sake of clarity, the court will refer to Plaintiff Board of Trustees as UAB Hospital.

the Agreement, UAB Hospital received reimbursements for services rendered to Defendants' Medicare Advantage members. (*Id.* ¶ 2).

On January 9, 2024, Plaintiff filed this action in the Circuit Court of Jefferson County, Alabama, and on February 9, 2024, the case was removed to this court. (Doc. # 1). In its complaint, Plaintiff asserts claims based on three theories of recovery: (1) breach of contract; (2) unjust enrichment; and (3) quantum meruit. (Doc. # 1-1 ¶¶ 37-54).

On March 1, 2024, Defendants filed their Motion to Compel Arbitration. (Doc. # 17). In support of their motion, Defendants rely on the Hospital Participation Agreement ("HPA") (Doc. # 21) between Plaintiff and Health Value Management, Inc. d/b/a ChoiceCare Network ("ChoiceCare"), an entity that is a "wholly-owned subsidiary of Defendant Humana, Inc." (Doc. # 17). Of relevance is the arbitration provision included in the HPA, which provides, in relevant part:

> **GRIEVANCE AND APPEALS PROCESS/BINDING ARBITRATION**
>
> 11.2   In the event of a dispute between [Plaintiff] and ChoiceCare which cannot be settled by a mutual agreement, including, without limitation, a dispute involving the interpretation of any provision of this Agreement or otherwise arising out of the parties' business relationship[,] the performance of this Agreement by [Plaintiff] or ChoiceCare, or allegations or claims involving violations of state laws or regulations other than laws or regulations which provide for resolution of disputes through regulatory channels, state or federal laws or regulations, such dispute shall be resolved by binding arbitration, conducted by a single arbitrator selected by the parties from a panel of arbitrators proposed by the American Arbitration Association (AAA). … The arbitration shall be conducted in [Alabama], in accordance with and subject to the Commercial Arbitration Rules of the AAA then in effect, or under such other mutually agreed upon guidelines.

(Doc. # 21-1 at 7).

Defendants seek to compel arbitration in this case because, they contend, Defendants can enforce the arbitration clause in the HPA. (Doc. # 17). Plaintiff argues in response that, because Plaintiff is not suing under the HPA -- an agreement to which Defendants are non-signatories --

but rather under the Letter of Agreement between Plaintiff and Defendants, the court, rather than an arbitrator, should decide whether Defendants can compel arbitration. (Doc. # 25).

**II.     Standard of Review**

In deciding a motion to compel arbitration, courts determine only whether the parties agreed to arbitrate and, if so, whether their agreement encompasses the asserted claims. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). If both conditions are met, courts must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court . . ."); *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) (internal citation omitted) ("Under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."); 9 U.S.C. § 3. If the court determines the plaintiff agreed to arbitrate her asserted claims, the court must either dismiss or stay the action pending arbitration. *Lambert*, 544 F.3d at 1195.

The court's ruling is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate," and the standard of review is analogous to a summary judgment motion. *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (internal quotation marks omitted). Accordingly, the movant must establish "that there is no genuine dispute as to any material fact" under Rule 56(a) on the question of whether the parties agreed to arbitrate. "As in a traditional summary judgment motion, an examination of substantive law determines which facts are material." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material "if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A genuine dispute as to a material fact exists where "the nonmoving party has produced evidence such that a

reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

**III.    Analysis**

Under the Federal Arbitration Act ("FAA"), a written arbitration provision in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "reflect[s] both a liberal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740 (2011) (citation and quotations omitted). The preference for arbitration is so strong that any doubts concerning the arbitrability of a dispute must be resolved in favor of arbitration. *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 (11th Cir. 2011) (internal citation omitted); *see also Picard v. Credit Sols., Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) (recognizing that courts should "rigorously enforce arbitration agreements") (internal quotation marks omitted).

It is well established in this Circuit that, when analyzing a motion to compel arbitration, courts must first address whether a binding arbitration agreement arose under both federal law and the state law that covers the disputed claims. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (noting that the federal policy favoring arbitration is taken into consideration even in applying ordinary state law). If such an agreement arose, the FAA directs a court to enter an order to compel arbitration and dismiss (or, alternatively, stay) all further proceedings in the action until arbitration has been completed. 9 U.S.C. §§ 3, 4.

When federal courts interpret arbitration agreements, state contract law governs and directs the analysis of whether the parties committed an issue to arbitration. *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015) (citing *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995)); *see also Caley*, 428 F.3d at 1368 ("Thus, in determining whether a

binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts."). Under Alabama law, a binding agreement is formed when there is an offer, acceptance, consideration, and "mutual assent to terms essential to the formation of a contract." *S. Energy Homes, Inc. v. Hennis*, 776 So. 2d 105, 108 (Ala. 2000) (emphasis omitted) (quoting *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997)).

Because arbitration is a matter of contract, the Supreme Court of the United States and the Eleventh Circuit have recognized that "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options of Chi., Inc.*, 514 U.S. at 943 (citing *AT&T Techs., Inc. v. Commc'n Workers*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986) (finding that parties may agree to arbitrate arbitrability issues)); *Attix*, 35 F.4th at 1289. So, while issues of arbitrability are generally decided by the court, parties may agree to delegate this decision to an arbitrator. *Wiggins v. Warren Averett, LLC*, 307 So. 3d 519, 522-23 (Ala. 2020) (quoting *Regions Bank v. Rice*, 209 So. 3d 1108, 1110 (Ala. 2016)).

When an arbitration agreement contains a delegation provision -- an agreement by the parties to arbitrate gateway issues of arbitrability -- "a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Neal v. GMRI, Inc.*, No. 1:19-cv-647-RAH, 2020 WL 698270, at *4 (M.D. Ala. Feb. 11, 2020) (internal citations omitted) (quoting

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 139 S. Ct. 524, 529 (2019)). "Only if [a court] determine[s] that the delegation clause is itself invalid or unenforceable may [it] review the enforceability of the arbitration agreement as a whole." *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016); *Parnell*, 804 F.3d at 1144. However, as the Supreme Court explained in *Kaplan*, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." 514 U.S. at 944, 115 S. Ct. at 1924 (internal quotation marks omitted). Absent a challenge to the delegation provision itself, federal courts must treat the delegation provision "as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72, 130 S. Ct. at 2779.

As this review of relevant case law shows, the court's role with respect to arbitrability is narrow. In this case, the parties do not dispute the validity of the HPA, nor the arbitration provision included in the HPA. Rather, they dispute whether Defendants, as nonsignatories, can enforce this arbitration provision. The court must first assess whether the HPA clearly and unmistakably delegates the question of arbitrability to an arbitrator. Then, the court will consider whether Plaintiff has specifically challenged the validity and/or enforceability of the parties' delegation agreement.

### A. Plaintiff and ChoiceCare clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator.

Because Plaintiff and ChoiceCare agreed to rely on Alabama laws, rules, and regulations under the arbitration provision, the court applies Alabama law in its analysis. *See Parnell*, 804 F.3d at 1147. (*See also* Doc. # 21-1 at 14).

Under Alabama law and the terms of the HPA, the parties agreed to submit questions of arbitrability to an arbitrator. The Supreme Court of Alabama and the Eleventh Circuit have each

held that when parties incorporate the rules of the AAA into their agreement, "they clearly and unmistakably agree that the arbitrator should decide whether the arbitration clause applies." *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (alterations and internal quotation marks omitted) (quoting *Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2014)); *Wiggins*, 307 So. 3d at 523 ("When an arbitration provision indicates that the AAA rules will apply to the arbitration proceedings, we have held that it is 'clear and unmistakable' that substantive-arbitrability decisions are to be made by the arbitrator"); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."). A plain reading of the arbitration provision in the HPA makes clear that the signatories agreed that "[t]he Arbitration shall be conducted in [Alabama], *in accordance with and subject to the Commercial Arbitration Rules of the AAA* then in effect, or under such other mutually agreed upon guidelines." (Doc. # 21 at 7) (emphasis added); *see also Fed. Ins. Co. v. Reedstrom*, 197 So. 3d 971, 976 (Ala. 2015) (finding that the language "pursuant to the then-prevailing commercial arbitration rules of the [AAA]" incorporated the AAA arbitration rules). Commercial Arbitration Rule 7(a), which governs an arbitrator's jurisdiction, provides, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including…the arbitrability of any claim or counterclaim." Comm. Arb. R. and Mediation Proc. R-7(a). Thus, because the HPA incorporates the rules of the AAA, questions of arbitrability have been delegated to the arbitrator.

It is the court's task then to determine what constitutes arbitrability. The Eleventh Circuit has instructed that arbitrability includes questions about the "'validity' or 'enforceability' of an arbitration agreement—*i.e.*, whether the parties have entered into a legally operative arbitration

agreement that is enforceable under law." *Attix*, 35 F.4th at 1299; *see Parnell*, 804 F.3d at 1146 (internal citation omitted) ("[P]arties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable."). Arbitrability also covers whether an arbitration provision applies to nonparties or nonsignatories, as is the issue here. *Wiggins*, 307 So. 3d at 522 (citing *Anderton v. The Practice-Monroeville, P.C.*, 164 So. 3d 1094, 1101 (Ala. 2014) and *MTA, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 So. 3d 27, 32 (Ala. 2012)); *Neal*, 2020 WL 698270, at *4-5; *see Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1171 (11th Cir. 2011).

Plaintiff contends that Defendants cannot enforce the arbitration provision as (1) they are not parties to the HPA and (2) Plaintiff has not sued under the HPA. However, as Alabama law makes clear, such an assertion presents a question of arbitrability, which is a matter reserved for the arbitrator.

Plaintiff also argues that, although it agreed to arbitrate issues involving ChoiceCare as a signatory of the HPA, it did not agree to allow an arbitrator to decide whether Defendants can enforce the HPA's arbitration provision. *See Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 288 (4th Cir. 2023). While courts in other Circuits may decide this issue differently, the law in Alabama provides that, in this context, an arbitrator must decide whether nonsignatories to an arbitration clause may enforce that arbitration provision. As discussed below, Plaintiff has not challenged the delegation provision, only whether the delegation provision is valid as to Defendants.

**B.      Plaintiff has not specifically challenged the delegation provision.**

Plaintiff and ChoiceCare clearly and unmistakably agreed to the delegation provision by incorporating the AAA Rules into the HPA. In a circumstance like this, a court retains jurisdiction

for a limited purpose – to review any challenge a party makes to a delegation provision. When a delegation provision is not challenged, a court must treat the delegation provision as valid. *Rent-A-Center*, 561 U.S. at 72, 130 S. Ct. at 2779. Plaintiff concedes (1) that it agreed to the delegation provision and (2) that the delegation would apply to disputes between Plaintiff and ChoiceCare (if ChoiceCare were the party specifically named in this action). (Doc. # 25 at 10). There is no direct challenge to the validity of the delegation provision. As to the dispute between it and Humana, Plaintiff advances only a general challenge to the applicability of the arbitration provision and HPA.[2] Therefore, the court must treat the delegation provision as valid, and it is for the arbitrator to determine the issue of arbitrability. *Rent-A-Center*, 561 U.S. at 72.

## IV.   Conclusion

Here, the HPA clearly and unmistakably delegates the question of arbitrability to an arbitrator and Plaintiff has not directly challenged that delegation provision. Therefore, Defendants' Motion to Compel Arbitration (Doc. # 17) is due to be granted in part to the extent it seeks to compel the parties to arbitrate the issue of arbitrability. Accordingly, Defendants' Motion to Stay proceedings (Doc. # 23) is due to be denied as moot.

An order consistent with this Memorandum Opinion will be entered.
**DONE** and **ORDERED** this April 23, 2024.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[2] To be sure, Plaintiff only makes reference to the delegation provision in one context: to reiterate its argument that the arbitration provision does not apply in this case. (Doc. # 25 at 8, 10). Plaintiff contends that Defendants' arguments in favor of arbitration ignore the fact that they are not signatories to the HPA. (*Id.*). The court acknowledges that Defendants did not sign the HPA; however, this argument is not a challenge to the delegation provision but rather how the HPA applies. *See Rent–A–Center*, 561 U.S. at 72.